Affirmed by published opinion. Judge MOTZ wrote the majority opinion, in which Judge DUNCAN joined. Judge DUNCAN wrote a separate concurring opinion. Judge NIEMEYER wrote a dissenting opinion.
*252 OPINION
DIANA GRIBBON MOTZ, Circuit Judge:
In this bankruptcy appeal we must decide whether a court should toll the mandatory period a debtor must wait to obtain a second Chapter 7 discharge, during the pendency of any intervening Chapter 13 proceeding filed by the debtor. For the reasons stated below, we agree with the bankruptcy and district courts that tolling does not apply here, and so affirm.
I.
A.
The Bankruptcy Code offers individual debtors two primary avenues of relief: Chapters 7 and 13 of the Code.[1] Under Chapter 7, a debtor liquidates his non-exempt assets; the proceeds are then distributed to creditors pursuant to a schedule of priorities. 11 U.S.C.A. § 701 et seq. (West 2007); see 6 Collier on, Bankruptcy ¶ 700.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2007) [hereinafter Collier ]. At the conclusion of a Chapter 7 proceeding, the debtor normally receives a discharge. See 11 U.S.C.A. § 727 (West 2007). The discharge provides the debtor with a “fresh start” by enjoining the collection of any remaining debts, unless the Code excepts those debts from discharge. See 11 U.S.C.A. §§ 523-24 (West 2007).
Alternatively, an individual may attempt to repay his debts through the procedure set forth in Chapter 13. 11 U.S.C.A. § 1301 et seq. (West 2007). Chapter 13 “provides a reorganization remedy for consumer debtors and proprietors with relatively small debts.” Johnson v. Home State Bank, 501 U.S. 78, 82, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). Under Chapter 13, the debtor submits a repayment plan to the bankruptcy court, which will confirm the plan if it meets statutory criteria that protect creditors’ interests. See 8 Collier ¶¶ 1300.01, 1325.01, 1325.05. If a debtor successfully completes a confirmed plan, he receives a discharge of remaining eligible debts. See id. ¶ 1328.01. Because Congress intended Chapter 13 proceedings to be entirely voluntary, a debtor, as a matter of right, may at any time dismiss his Chapter 13 petition or convert it to a Chapter 7 proceeding. See id. ¶ 1307.01.
The initiation of either Chapter 7 or Chapter 13 proceedings triggers an “automatic stay” under 11 U.S.C.A. § 362(a) (West 2007). This automatic stay bars creditor collection activity for the duration of the proceeding, although creditors may petition the court to terminate, suspend, or condition the stay. See 3 Collier ¶¶ 362.01, 362.07.
The case at hand involves 11 U.S.C.A. § 727(a) (West 2004). That section of the Bankruptcy Code governs discharges in Chapter 7 cases and requires a court to grant a discharge unless certain conditions apply. See id. The condition at issue here, § 727(a)(8), provides that a debtor is not entitled to a discharge if he “has been granted a discharge under [Chapters 7 or 11], in a case commenced within six years before the date of the filing of the petition.” Id. § 727(a)(8).[2] In *253 other words, § 727(a)(8) requires debtors to wait at least six years, after filing a Chapter 7 or 11 ease that resulted in a discharge before initiating a later Chapter 7 case, in order to be entitled to a discharge in the later case.
B.
The parties do not dispute the material facts of this case. On October 29, 1996, Deborah Williams filed a petition under Chapter 7; she later received a discharge. Almost two years later, on September 21, 1999, Williams initiated a Chapter 13 proceeding, which was dismissed on November 2, 1999. Williams initiated a second Chapter 13 case on May 15, 2000, which was dismissed on January 25, 2001.
On July 6, 2001, Tidewater Finance Company (“Tidewater”) obtained a judgment for $7,468.84, plus accrued interest and costs, against Williams based on her default on an auto loan. After obtaining this judgment, Tidewater did not initiate proceedings to either enforce it or secure it through a lien or other device.[3]
Williams initiated a third Chapter 13 proceeding on August 14, 2001; it was dismissed on September 11, 2003. Tidewater has neither alleged nor presented evidence that Williams filed for Chapter 13 relief in bad faith. Based on the record before us, we have no reason to doubt that each time Williams filed for Chapter 13, she did so in a sincere effort to manage and pay her debts.
On March 15, 2004, Williams initiated the Chapter 7 petition at issue in this case. Tidewater commenced an adversary proceeding in the bankruptcy court objecting to discharge and then moved for summary judgment, arguing that Williams was ineligible for a discharge under § 727(a)(8). Tidewater acknowledged that § 727(a)(8) requires only that a debtor wait six years after filing a Chapter 7 petition that resulted in a discharge before filing a subsequent Chapter 7 action and that seven years, 139 days had passed since Williams filed the petition that resulted in her first discharge. Nevertheless, Tidewater argued that the § 727(a)(8) period was “equitably tolled” during Williams’s three Chapter 13 proceedings, including the two that occurred prior to accrual of Tidewater’s claim against Williams. If the waiting period were in fact tolled during the three Chapter 13 proceedings, for a total duration of two years and 234 days, Williams would not be entitled to obtain a second Chapter 7 discharge under § 727(a)(8).
The bankruptcy court denied Tidewater’s motion for summary judgment and granted summary judgment to Williams, holding that § 727(a)(8) did not provide grounds for denial of a discharge in her case. Tidewater Fin. Co. v. Williams (In re Williams), 333 B.R. 68, 70 (Bankr. *254 D.Md.2005). The court reasoned that “[e]quitable tolling is not applicable here because § 727(a)(8) does not define a limitations period for Tidewater, a creditor, to assert its claim”; rather, it “defines a condition that [Williams] was required to satisfy in order to qualify for ... a discharge of her debts.” Id. at 73. Tidewater appealed to the district court, which affirmed. Tidewater Fin. Co. v. Williams, 341 B.R. 530 (D.Md.2006).
Tidewater appeals the district court’s judgment affirming the order of the bankruptcy court. We review de novo the judgment of a district court sitting in review of a bankruptcy court. In re Merry-Go-Round Enters., Inc., 400 F.3d 219, 224 (4th Cir.2005). We apply to the bankruptcy court judgment the same standard employed by the district court. Id. Thus, we review the bankruptcy court’s factual findings for clear error and its legal conclusions de novo. Id.
On appeal, Tidewater contends that: (1) § 727(a)(8) establishes a statute of limitations that must be tolled; and (2) failure to toll § 727(a)(8) would create a “loophole” in the Bankruptcy Code. We address each contention in turn.
II.
Tidewater’s first argument is that the six-year waiting period in § 727(a)(8) is a limitations period that the bankruptcy court should have equitably tolled during Williams’s Chapter 13 proceedings. In assessing this statutory argument, we begin, as always, with the text of the statute. Limtiaco v. Camacho, 545 U.S. -, 127 S.Ct. 1413, 1418, 167 L.Ed.2d 212 (2007). Section 727(a)(8) provides:
The court shall grant the debtor a discharge, unless ... the debtor has been granted a discharge under [Chapters 7 or 11], in a case commenced within six years before the date of the filing of the petition.
11 U.S.C.A. § 727(a)(8) (West 2004).
Plainly, the statute itself — unlike other Code provisions — does not expressly provide for tolling. Cf. 11 U.S.C. § 108(c) (2000) (extending statutes of limitation for creditors when the automatic stay bars their collection efforts). Notwithstanding this plain language, Tidewater argues that tolling applies here because of the principle that statutes of limitation are “customarily subject to ‘equitable tolling,’ ” Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), unless tolling would be “inconsistent with the text of the relevant statute.” United States v. Beggarly, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998).
Tidewater’s argument rests on a faulty premise: that § 727(a)(8) is a statute of limitations. In fact, § 727(a)(8) imposes no limitations period. “A statute of limitation requires a litigant to file a claim within a specified period of time.” Rector v. Approved Fed. Sav. Bank, 265 F.3d 248, 252 (4th Cir.2001); see also Black’s Law Dictionary 927 (6th ed.1990) (statutes of limitation “set[ ] maximum time periods during which certain actions can be brought or rights enforced”). Section 727(a)(8) does not “require[] a litigant”— here, Tidewater' — '“to file [its] claim within a specified period of time.” Rector, 265 F.3d at 252. Instead, § 727(a)(8) conditions the ability of a debtor, like Williams, to obtain a Chapter 7 discharge, by requiring her to wait six years after initiating earlier proceedings that ended in a discharge. Thus, as the bankruptcy court explained, § 727(a)(8) “does not define a limitations period for Tidewater, a creditor, to assert its claim,” rather it “defines a condition that the Debtor [Williams] was required to satisfy in order to qualify for a *255 benefit, namely, a discharge of her debts.” Tidewater, 333 B.R. at 73 (emphasis added).
Despite the fact that § 727(a)(8) does not set forth a “specified period of time” in which Tidewater can assert its claim, Rector, 265 F.3d at 252, Tidewater insists that § 727(a)(8) is a limitations period subject to equitable tolling. Tidewater principally relies on Young v. United States, 535 U.S. 43, 47, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002), in which the Court held that other provisions in the Bankruptcy Code create a limitations period subject to equitable tolling. But Young offers Tidewater no support because the provisions at issue there differ vastly from § 727(a)(8).
The provisions at issue in Young are 11 U.S.C. §§ 507(a)(8)(A)(i) and 523(a)(1)(A) (2000). The latter, § 523(a)(1)(A), excepts from a discharge any tax “of the kind and for the periods specified in” § 507(a)(8).[4] Section 507(a)(8) in turn grants priority to unsecured income tax claims for which a return was due “after three years before the date of the filing of the petition.” Id. § 507(a)(8)(A)(i).[5] As the Young Court explained, these two provisions combine to provide that “[i]f the IRS has a claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim enjoys eighth priority under § 507(a)(8)(A)(i) and is nondis-chargeable in bankruptcy.” 535 U.S. at 46,122 S.Ct. 1036.
The Court in Young held that this three-year period was a “limitations period because it prescribe^] a period within which certain rights (namely, priority and nondis-chargeability in bankruptcy) may be enforced” by the claimant, there the IRS. Id. at 47, 122 S.Ct. 1036 (emphasis added). Moreover, the Court noted that, like other statutes of limitations, the three-year period in Young “commence[d] when the claimant [the IRS] ha[d] a complete and present cause of action,” i.e., when the taxpayer’s return was due. Id. at 49, 122 S.Ct. 1036.
Not only limitations periods, but all statutory periods to which courts have applied equitable tolling principles, contain these same two characteristics. First, they provide a plaintiff (in the bankruptcy context, a creditor) with a specified period of time within which the plaintiff must act to pursue a claim in order to preserve a remedy. See, e.g., Young, 535 U.S. at 47, 122 S.Ct. 1036 (plaintiff (IRS) must act to collect tax debt or perfect tax lien within three years); Zipes v. Trans World Airlines, 455 U.S. 385, 393-95, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (plaintiff must act to file charge of discrimination with EEOC within 180 days); ICC v. Bhd. of Locomotive Eng’rs, 482 U.S. 270, 277, 284-85, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987) (plaintiff must petition for review of final order of ICC within 60 days); Irwin, 498 U.S. at 92-93, 111 S.Ct. 453 (plaintiff must act to *256 file Title VII action within 30 days of receipt of “right-to-sue” notice from EEOC). Second, such periods commence when the plaintiff has (or discovers that he has) a “complete and present cause of action.” See Young, 535 U.S. at 48-49, 122 S.Ct. 1036 (period commences with failure to file tax return); Zipes, 455 U.S. at 393-95, 102 S.Ct. 1127 (period commences with discriminatory conduct); ICC, 482 U.S. at 277, 284-85, 107 S.Ct. 2360 (period commences with service of final administrative order); Irwin, 498 U.S. at 92-93, 111 S.Ct. 453 (period commences with receipt of “right-to-sue” notice).[6] When these two circumstances exist, a court will often toll a period if it concludes that equitable considerations excuse a plaintiffs failure to take the required action within the time period. See Young, 535 U.S. at 50-51, 122 S.Ct. 1036 (explaining that tolling is permitted when “claimant has actively pursued his judicial remedies” or “has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass”) (internal quotation marks omitted).
In stark contrast, the provision at issue here, § 727(a)(8), does not contain either of these critical characteristics.[7] First, it does not “prescribe[] a period [of time] within which [a] certain right[ ]” may “be enforced” by the claimant, Tidewater. See Young, 535 U.S. at 47, 122 S.Ct. 1036. Instead, § 727(a)(8) prescribes a period of time a debtor must wait before becoming eligible for a discharge. Second, the six-year period in § 727(a)(8) does not “commence[ ] when the claimant [Tidewater] *257 ha[d] a complete and present cause of action.” Young, 535 U.S. at 49, 122 S.Ct. 1036. Rather, the six-year period commences when the debtor initiates a bankruptcy proceeding that led to a prior discharge, which may be, as here, well before the claimant had “a complete and present cause of action.”
Although a creditor may incidentally benefit from the debtor’s inability to obtain a discharge during the six-year period, the extent of that benefit is entirely contingent on when the creditor’s claim arose, i.e., when the debtor defaulted. Under the statute, the creditor may benefit for a very long period (five years and 364 days), a very short period (one day), or any time in between. If the debt accrued shortly after the first discharge, the creditor could wait more than five years to collect the debt, confident that the debtor could not obtain a discharge.[8] But in a case like that at hand, in which the creditor did not obtain a judgment against the debtor until more than four years after the initial discharge, the debtor will become eligible for another discharge in less than two years. If Congress had intended § 727(a)(8) to guarantee creditors six years of nondischargeability to enforce their claims, the statutory period would run from the accrual of the creditor’s claim — instead of running from the initiation of a proceeding that may, as here, well predate that claim.[9]
Tidewater utterly ignores the critical differences between § 727(a)(8) and the provisions at issue in Yoimg. Instead, Tidewater contends that because both § 727(a)(8) and the Young provisions set forth “lookback” periods, both must set forth limitations periods. The contention is meritless. “Lookback” simply describes how a statutory provision measures a period of time, not whether it constitutes a period subject to tolling. The Court tolled the period in Young not because it happened to measure time by looking backwards, but because it was a limitations period and equity required the application of tolling principles. In contrast, as demonstrated above, § 727(a)(8) lacks the defining characteristics of a limitations period. Moreover, § 727(a)(8) advances different policies than those served by limita *258 tions periods. As the Supreme Court has explained, limitations periods like that in Young further policies of “repose, elimination of stale claims, and certainty about a plaintiffs opportunity for recovery and a defendant’s potential liabilities.” Young, 535 U.S. at 47, 122 S.Ct. 1036 (emphasis added). In contrast, § 727(a)(8) serves an entirely different purpose: deterring serial Chapter 7 bankruptcies by requiring defendant debtors to wait a specified period of time between Chapter 7 discharges.
Furthermore, as the district court recognized, adopting Tidewater’s position would be at odds with the overall statutory scheme set forth in the Bankruptcy Code. Under Tidewater’s view, a debtor, like Williams, could only attempt to utilize Chapter 13 to reorganize and pay down her debt if she were willing to extend the period she would have to wait before possibly receiving a discharge under Chapter 7. This would discourage honest debtors from using Chapter 13 to pay their debts with the hope of avoiding a second Chapter 7 proceeding — because an unsuccessful Chapter 13 proceeding, even one filed in good faith, would extend the waiting period set by § 727(a)(8).
In addition, as the district court also observed, Tidewater’s approach would allow all creditors to benefit from equitable tolling — even those that were not at all affected by the Chapter 13 proceeding that caused the tolling. See Tidewater, 341 B.R. at 537-38. This case provides an example. Tidewater’s claim against Williams arose after her second Chapter 13 proceeding. Yet Tidewater contends that somehow it should receive the benefit of tolling the § 727(a)(8) period during Williams’s first two Chapter 13 proceedings — time in which it had no claim against Williams that could have been affected by the automatic stay in those proceedings. Under Tidewater’s theory, it would still benefit from tolling during the first two Chapter 13 proceedings even if Williams had already paid the debts of all those creditors affected by the automatic stay in those proceedings.
For all of these reasons, we can only conclude that the bankruptcy and district courts properly held that § 727(a)(8) is not a limitations period and tolling has no place here.
III.
Tidewater also argues that failing to toll § 727(a)(8) leaves a “loophole” in the Bankruptcy Code, which “allows a debtor to file a petition for relief under Chapter 7 and receive a discharge, then file, dismiss[,] and refile Chapter 13 petitions and cloak themselves [sic] with the automatic stay until six calendar years elapse.” This contention must necessarily fail given our conclusion that § 727(a)(8) is not a statute to which tolling principles could apply. In any event, however, the “loophole” argument is singularly unpersuasive. For Congress has provided bankruptcy courts with several tools to remedy any “loophole” of the sort feared by Tidewater.
First, 11 U.S.C. § 105(a) (2000) authorizes bankruptcy courts to “issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11].” It states that “[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.” Id. (emphasis added). If a bankruptcy court found that a debtor was abusing Chapter 13 in the manner Tidewater fears, § 105(a) empowers the court to remedy that abuse.
*259 Moreover, although the automatic stay that accompanies Chapter 13 filings bars creditor collection efforts, 11 U.S.C. § 362 (2000) allows creditors to request relief from the stay “for cause.” Thus, if a creditor demonstrated that a debtor had filed a Chapter 13 proceeding in bad faith, the creditor could request relief from the stay from the court. Furthermore, if a debtor sought to dismiss a Chapter 13 action in order to avoid the bankruptcy court’s judgment on that relief, such dismissal would' bar the debtor from filing another bankruptcy petition for 180 days, giving creditors a window in which to pursue their claims. 11 U.S.C. § 109(g)(2) (2000).
Additionally, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 provides that if a debtor files a Chapter 13 petition within a year of dismissing a prior one, the automatic stay generally dissolves after 30 days. See 11 U.S.C.A. § 362(c)(3) (West 2007). And if the debtor dismisses and refiles more than two Chapter 13 petitions within a year, the automatic stay does not go into effect upon the filing of a third or subsequent petition. See id. § 362(c)(4). Although a debtor can argue that the stay should be in effect, the debtor bears the burden of rebutting, by clear and convincing evidence, a presumption that he or she filed the most recent petition in bad faith. See id. § 362(c)(3)-(4).[10]
Further, a debtor who successively files and dismisses Chapter 13 cases risks losing, forever, her ability to obtain a discharge of the debts that would have been dischargeable in those Chapter 13 proceedings. The Bankruptcy Code, 11 U.S.C. § 349(a) (2000), allows a court dismissing a bankruptcy petition, for “cause,” to order that the dismissal of the petition bars the later discharge of any debts that could have been discharged in the initial proceeding.
Thus, Congress has provided bankruptcy courts with numerous measures to ward off the dire “loophole” scenario Tidewater forecasts. Significantly, each of the anti-serial-filing measures discussed above allows the bankruptcy court to make an individualized determination of whether the debtor is acting in good faith. This permits honest debtors to make full use of the bankruptcy system, while empowering bankruptcy courts to screen out bad-faith petitioners, precisely as Congress intended.
IV.
Our dissenting colleague would instead defy congressional intent by “tolling” the § 727(a)(8) period during the pendency of a debtor’s Chapter 13 proceeding. To reach this result, the dissent must contend that § 727(a)(8) is something that it manifestly is not — a limitations period. The weakness of the argument offered by the dissent in support of this contention actually demonstrates the critical differences between § 727(a)(8) and limitations periods like that in Young.
A.
The dissent concedes that § 727(a)(8), unlike “typical” limitations periods — including that in Young, does not set forth a *260 specified period of time that commences when the plaintiff (here Tidewater) has or discovers it has a “complete and present cause of action. ” Young, 535 U.S. at 49, 122 S.Ct. 1036 (emphasis added); see post at 268-69. The dissent attempts to dismiss this difference by maintaining it “has no intrinsic significance” because a “statute may operate as a limitations period ... by referencing any measuring point.” Post at 269. Tellingly, the dissent offers no support for this contention.
The treatises on which the Supreme Court relied in Young clearly reject this novel theory. They teach that “[statutes of limitation commence to run against a cause of action from the time it accrues, or from the time when the holder thereof has the right to apply to the court for relief, and to commence proceedings to enforce his rights.” 1 H.G. Wood, Limitation of Actions § 122a, at 684 (Dewitt C. Moore, ed., 4th ed.1916), cited approvingly in Young, 535 U.S. at 47, 49, 122 S.Ct. 1036; see also id. § 117, at 612 (“[T]he statute of limitations only begins to run from the time when the right of action accrues .... ”); id. § 117, at 616 (“[T]he statute of limitations does not begin to run until there is a demand capable of present enforcement ....”); id. § 119, at 627 (“[T]he different periods within which the remedies for the cases provided for are to be pursued are to be reckoned ... from the time the respective causes of action accrue ....”); accord 1 Calvin W. Corman, Limitation of Actions § 6.1, at 373 (1991) (“Because statutes of limitations do not begin to run against a cause until the action accrues, they are useful in preventing stale claims. The plaintiff cannot be charged with delay before his or her cause of action has accrued, as it would be unreasonable for any legal system to commence the running of its statute of limitations before suit can legally be brought.”), cited approvingly in Young, 535 U.S. at 49, 122 S.Ct. 1036.
Thus, it has been long established that limitations periods begin to run when the claim they govern accrues. That continues to be the law. See, e.g., Teamsters & Employers Welfare Trust v. Gorman Bros. Ready Mix, 283 F.3d 877, 880 (7th Cir.2002) (Posner, J.) (“A statute of limitations cuts off the right to sue at a fixed date after the plain-tiffs cause of action accrued.”); Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir.1998) (“[A] statute of limitations establishes the time period within which lawsuits may be commenced after a cause of action has accrued.”); 51 Am.Jur.2d Limitation of Actions § 9 (2d ed.2000) (“a ‘statute of limitations’ establishes a fixed period of time within which lawsuits must be commenced after a cause of action has accrued”); see also Ledbetter v. Goodyear Tire & Rubber Co., — U.S. —, 127 S.Ct. 2162, 2171 n. 3, 167 L.Ed.2d 982 (2007).
In sum, contrary to the dissent’s unsupported assertion, limitations periods run from the accrual of the cause of action they govern — not from “any measuring point.”[11] Because the § 727(a)(8) period does not begin to run from the accrual of the creditor’s claim, it does not “cut[ ] off [a remedy] at a fixed date after th[at] ... cause of action accrued” and so is not a limitations period. Gorman Bros., 283 F.3d at 880.
B.
Moreover, although the dissent argues to the contrary, § 727(a)(8) fails to serve *261 one of the critical purposes of all limitations periods, including that in Young.
The Supreme Court in Young held that “all limitations provisions” serve the purposes of “repose, elimination of stale claims, and certainty” regarding parties’ rights. 535 U.S. at 47, 122 S.Ct. 1036 (quoting Rotella v. Wood, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)) (emphasis added). The dissent contends generally that § 727(a)(8) serves the same purposes as the limitations period in Young, post at 267, but then does not even attempt to demonstrate that § 727(a)(8) “eliminat[es] stale claims.” See post at 267-68 (discussing the statute’s furtherance of policies of “repose, certainty, etc.” but omitting any discussion of how § 727(a)(8) furthers “elimination of stale claims”).
This omission is startling, since the elimination of stale claims is the raison d’etre of statutes of limitations. See, e.g., Beach v. Ocwen Fed. Bank, 523 U.S. 410, 415, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998) (“[T]he object of a statute of limitation [is to] keep[ ] stale litigation out of the courts ....”) (internal quotation marks omitted); United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (“Statutes of limitations ... represent a pervasive legislative judgment that ... the right to be free of stale claims in time comes to prevail over the right to prosecute them.”) (internal quotation marks omitted); Guaranty Trust Co. v. United States, 304 U.S. 126, 136, 58 S.Ct. 785, 82 L.Ed. 1224 (1938) (“The statute of limitations is ... designed to protect the citizens from stale and vexatious claims....”); Weber v. Bd. of Harbor Comm’rs, 18 Wall. 57, 85 U.S. 57, 70, 21 L.Ed. 798 (1873) (“Statutes of limitation ... protect[ ] parties from the prosecution of stale claims .... ”); see also Lekas v. United Airlines, Inc., 282 F.3d 296, 299 (4th Cir.2002) (“[T]he public-interest policy for limitations periods [is] that at some point the right to be free of stale claims ... comes to prevail over the right to prosecute them.”) (omission in the original) (internal quotation marks omitted). Surely it was for this reason that the Supreme Court in Young held that one of the purposes served by “all limitations provisions” is “eliminating] stale claims.” 535 U.S. at 47, 122 S.Ct. 1036 (quoting Rotella, 528 U.S. at 555, 120 S.Ct. 1075) (emphasis added).
The dissent must avoid discussing whether § 727(a)(8) eliminates “stale claims” because the statute obviously does not serve this purpose. The expiration of the § 727(a)(8) period bears no relation to the age of a creditor’s claim. Some creditors may benefit from the debtor’s ineligibility for discharge for nearly six years; other creditors may lose the benefit the very day after their claim arises. To the extent § 727(a)(8) “eliminates” claims, it arbitrarily cuts down stale and very fresh claims alike. For this reason, it does absolutely nothing to further a critical policy— eliminating stale claims—-served by “all,” Young, 535 U.S. at 47, 122 S.Ct. 1036, limitations periods.
In sum, the dissent’s own arguments conclusively demonstrate that § 727(a)(8) neither constitutes a statute of limitations nor serves the purposes animating such statutes.
V.
For the foregoing reasons, the judgment of the district court is

AFFIRMED.

. Individuals may also file under Chapter 11 of the Code, but most choose Chapter 13 because it offers similar relief with streamlined procedures. In addition, family farmers or fishermen with regular annual income may file under Chapter 12.

. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (codified in scattered sections of Title 11 of the U.S.Code), extends this period from six to eight years, but does not otherwise amend § 727(a)(8). See id. § 312. *253 The 2005 Act applies, however, only to cases commenced on or after the enactment of the statute. See id. §§ 1406, 1501. The debtor here, Deborah Williams, filed her petition pri- or to enactment of the Act and so the six-year period applies in this case.

. The dissent asserts, without any basis in the record, that Tidewater has failed to protect its rights “in large part because Williams has lingered in multiple bankruptcy proceedings.’’ Post at 263. In truth, we have no idea why Tidewater chose not to enforce or secure its judgment. It may have decided that the possible return was not worth the cost of further proceedings, or simply have forgotten about the debt until receiving notice of Williams’s Chapter 7 petition. The record does reveal that between the time Tidewater obtained a judgment against Williams and the initiation of the Chapter 7 petition at issue here, Tidewater had over 220 days when the automatic stay was not in effect, in which it could have acted, but failed to do so. Tidewater offers no reason why it did not pursue its claim during this period.

. Section 523(a)(1)(A) provides in pertinent part:
Exceptions to discharge (a) A discharge under [select provisions of the Code] does not discharge an individual debtor from any debt — (1) for a tax or customs duty — (A) of the kind and for the periods specified in ... 507(a)(8) of this title....
11 U.S.C. § 523(a)(1)(A).

. Section 507(a)(8)(A)(i) provides in pertinent part:
Priorities (a) The following expenses and claims have priority in the following order: ... (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for — (A) a tax on or measured by income or gross receipts — (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.
11 U.S.C. § 507(a)(8)(A)(i).

. The dissent inexplicably takes issue with our citation of "non-bankruptcy cases” to illustrate the characteristics of limitations periods. See post at 268. Limitations periods exist in every sort of statutory scheme, "representing] a peivasive legislative judgment ... that the right to be free of stale claims in time comes to prevail over the right to prosecute them.” United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (internal quotation marks omitted) (emphasis added). No authority suggests that limitations periods take on some unique character when located in the Bankruptcy Code.

. Three lower-court cases (two of which are unpublished), which treated another provision of the Bankruptcy Code as a limitations period, constitute the only authority the dissent cites for its view that § 727(a)(8) is a limitations period. See post at 268 (citing In re Womble, 299 B.R. 810 (N.D.Tex.2003), aff'd on other grounds 108 Fed.Appx. 993 (5th Cir.2004); In re Seeber, No. 03-19567, 2005 WL 4677823 (Bankr.E.D.La. July 5, 2005); In re Riley, No. 01-4452, 2004 WL 2370640 (Bankr.D. Haw. April 20, 2004)). Of course, these cases do not bind us and are persuasive only to the extent that they rest on a sound rationale. As the dissent’s failure to discuss their reasoning suggests, they in fact provide no persuasive rationale. Both Riley and See-ber rely on Womble, without further analysis. In Womble, a district court in Texas affirmed a bankruptcy court’s holding that Young required the tolling of 11 U.S.C. § 727(a)(2)(A) (2000) because it, like the statute in Young, (1) "reference[s] 'the date of the filing of the petition’ ” and (2) "act[s] as [a] limitations period[ ], requiring creditors to promptly protect their rights or risk having a debt discharged in bankruptcy.” 299 B.R. at 812. The court offered no reason why a provision that "reference [s] ‘the date of the filing of the petition' ” should automatically be interpreted as a limitations provision; the dissent offers none and we can think of none. The remaining rationale offered in Womble defines "limitations period” far too broadly — not every provision that "requir[es] creditors to promptly protect their rights or risk having a debt discharged in bankruptcy” constitutes a limitations period. After all, the mere possibility of discharge "requir[es] creditors to promptly protect their rights or risk having a debt discharged in bankruptcy.” Thus, Womble and its progeny hardly constitute "persuasive” authority for tolling § 727(a)(8). Moreover, the cases interpreting 11 U.S.C. § 109(g)(2) (2000), which the dissent cites as an example of tolling, post at 268, are even less useful here. Those cases toll § 109(g)(2) to cure a prior violation of that provision; here, not even Tidewater suggests that Williams’s Chapter 13 filings violated the Code.

. In some cases, even this confidence would be misplaced. If through a novation or some other device a second debtor (entitled to a discharge) was substituted for the unentitled debtor, then § 727(a)(8) would no longer bar the discharge of the same debt that it earlier affected. This is possible because § 727(a)(8) makes specific debtors ineligible for discharge, rather than, like the provisions in Young, making specific debts immune from discharge.

. We note that some courts have read § 727(a), which provides that “[t]he court shall grant the debtor a discharge, unless” one of several conditions is met, to vest bankruptcy courts with discretion to grant a discharge even when a ground for denying discharge is present. See, e.g., Union Planters Bank v. Connors, 283 F.3d 896, 901 (7th Cir.2002). The Supreme Court, however, has said that ”[u]nder § 727(a), the court may not grant a discharge of any debts if” one of the conditions is met. Kontrick v. Ryan, 540 U.S. 443, 447 n. 1, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (dicta). Neither party argues that § 727(a) vests district courts with discretion to grant a discharge even when a ground for denial is present. Moreover, if § 727(a) does in fact vest bankruptcy courts with discretion to grant a discharge even when a ground for denial is present, Tidewater’s case is even weaker. Under that interpretation, Williams could receive a discharge even if she had initiated this proceeding within the § 727(a)(8) six-year period' — because the bankruptcy court could exercise its discretion to nonetheless grant a discharge. In that event it is even more difficult to conclude that § 727(a)(8) grants creditors a period of non-dischargeability because the debts would be dischargeable, at the district court's discretion. For these reasons, in the case at hand we assume without deciding that a debtor is ineligible for discharge if one of the § 727(a) conditions is met.

. These amendments appeared in a section of the Act entitled "Discouraging Bad Faith Repeat Filing.” Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 § 302. See also id. § 303 (titled "Curbing Abusive Filings”); id. § 312 (titled "Extension of Period between Bankruptcy Discharges”). Plainly, Congress was aware of the type of mischief Tidewater describes and enacted measures to remedy it — measures that do not include the equitable tolling of § 727(a)(8).

. The discovery rule does not change this principle, but rather "allows [a] cause of action to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action.” 2 Corman, Limitation of Actions § 11.1.1, at 134.