**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE RONALD NEFF,

*Debtor*,

DOUGLAS J. DENOCE,

*Appellant*,

v.

RONALD NEFF,

*Appellee*,

DAVID K. GOTTLIEB,

*Trustee*.

No. 14-60017

BAP No. 13-1041

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Dunn, and Taylor, Bankruptcy Judges, Presiding

Argued and Submitted March 10, 2016
Pasadena, California

Filed June 9, 2016

Before: Richard R. Clifton, Consuelo M. Callahan,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's decision affirming the bankruptcy court's summary judgment in favor of a chapter 7 debtor in a creditor's adversary proceeding seeking an exception to discharge on the basis of a fraudulent transfer of property under 11 U.S.C. § 727(a)(2).

The panel held that § 727(a)(2), which prevents the bankruptcy court from granting a debtor a discharge if the debtor improperly transferred property within one year before the date of the filing of the bankruptcy petition, is not subject to equitable tolling.

### COUNSEL

Douglas John DeNoce (argued), Westlake Village, California, pro se Appellant.

Michael D. Kwasigroch (argued), Law Offices of Michael Kwasigroch, Simi Valley, California, for Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

IKUTA, Circuit Judge:

Douglas DeNoce, a creditor in Ronald Neff's Chapter 7 bankruptcy case, appeals the Bankruptcy Appellate Panel's (BAP) decision that the exception to discharge found in 11 U.S.C. § 727(a)(2) did not apply to Neff. We agree with the BAP that § 727(a)(2), which prevents the bankruptcy court from granting a debtor a discharge if the debtor improperly transferred property "within one year before the date of the filing of the petition" in bankruptcy, is not subject to equitable tolling. We therefore affirm the BAP's decision.

I

In 2007, Neff, a dentist, treated DeNoce with the surgical placement of eight dental implants. Those implants failed, as did the ones from a subsequent surgery to repair the first implants. DeNoce filed a malpractice action against Neff in state court in October 2008, and DeNoce was ultimately awarded a judgment of $310,000.

Neff filed his first bankruptcy petition under Chapter 13 in March 2010. On April 7, 2010, Neff recorded a quitclaim deed transferring a condominium located on Lake Harbor Lane in Westlake Village, California, from himself to a revocable living trust that he had created. Neff's first Chapter 13 case was dismissed on April 9, 2010, for his failure to appear at the scheduled meeting of creditors, *see* 11 U.S.C. § 341(a). Neff filed a second Chapter 13 bankruptcy petition on June 18, 2010. He reported the trust's ownership of the Lake Harbor property on the schedule listing personal

property,[1] but he did not report his recent transfer of it to the trust on the Statement of Financial Affairs.[2]   After the bankruptcy court learned of Neff's transfer of the Lake Harbor property to his revocable living trust during his first Chapter 13 bankruptcy case, Neff recorded a quitclaim deed transferring the Lake Harbor property back to himself on August 4, 2010.

In October 2010, DeNoce filed an adversary complaint alleging that his $310,000 state court judgment was not dischargeable in Neff's Chapter 13 bankruptcy because (among other reasons) Neff had transferred his Lake Harbor property into his revocable living trust "with intent to hinder, delay or defraud a creditor," 11 U.S.C. § 727(a).  Neff filed a motion to dismiss the adversary complaint, and the bankruptcy court granted the motion as to DeNoce's § 727(a) claim without leave to amend, but allowed DeNoce to pursue other claims against Neff.   Neff ultimately voluntarily dismissed his Chapter 13 case on October 19, 2011.

Neff then filed a third bankruptcy petition, this time under Chapter 7, on October 24, 2011.  In January 2012, DeNoce again filed an adversary complaint arguing that the court

---

[1] At the time of DeNoce's bankruptcy proceedings, the applicable form was Official Form 6B, "Schedule B, Personal Property."   Effective December 1, 2015, this form has been replaced by Official Form B 106A/B, "Schedule A/B: Property."

[2] Official Form B 7, "Statement of Financial Affairs," requires the debtor to list all property transferred to "a self-settled trust or similar device of which the debtor is a beneficiary" within ten years before the commencement of the Chapter 13 case.  Effective December 1, 2015, this form has been replaced by Official Form B 107, "Statement of Financial Affairs for Individuals Filing for Bankruptcy."

should deny Neff a discharge of his debts under 11 U.S.C. § 727(a)(2) because Neff fraudulently transferred the Lake Harbor property. In his answer and subsequent motion for summary judgment, Neff argued that he had transferred the Lake Harbor property more than one year before filing his Chapter 7 petition. Because § 727(a)(2) bars a discharge only if the improper transfer occurred "within one year before the date of the filing of the petition," Neff contended that § 727(a)(2) did not prevent a discharge of his debts. In considering the motion for summary judgment, the bankruptcy court held that the transfer occurred more than one year before the Chapter 7 petition was filed and equitable tolling was not applicable to the one-year period in § 727(a)(2). The bankruptcy court granted summary judgment in favor of Neff on this issue, and it subsequently denied DeNoce's motion for reconsideration. DeNoce then appealed to the BAP, which affirmed the bankruptcy court. *In re Neff*, 505 B.R. 255 (B.A.P. 9th Cir. 2014).

II

On appeal, DeNoce challenges the BAP's decision that equitable tolling does not apply to § 727(a)(2). He argues that a court should deem Neff's transfer of the Lake Harbor property to have occurred "within one year before the date of the filing of the petition" for purposes of § 727(a)(2) because the one-year period was tolled during the pendency of Neff's two prior Chapter 13 cases. We have jurisdiction over final decisions of the BAP under 28 U.S.C. § 158(d), and we review such decisions de novo, *In re Boyajian*, 564 F.3d 1088, 1090 (9th Cir. 2009).

A

Chapter 7 of the Bankruptcy Code provides for the liquidation of a debtor's nonexempt assets, which are then used to pay creditors in the manner set forth in the Code. 11 U.S.C. §§ 704, 726. A discharge under Chapter 7 releases the individual debtor from liability for specified debts. 11 U.S.C. § 727. Section 727(a)(2) provides that the "court shall grant the debtor a discharge, unless . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred . . . – (A) property of the debtor, within one year before the date of the filing of the petition."

There is no dispute that Neff's transfer of the Lake Harbor property took place more than one year before Neff filed his Chapter 7 petition. Therefore, under the plain language of § 727(a)(2), the transfer is no impediment to the court's grant of a discharge. DeNoce can prevail on his claim only if the one-year time period in § 727(a)(2) is subject to equitable tolling.

"As a general matter, equitable tolling pauses the running of, or tolls, a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231–32 (2014) (internal quotation marks omitted). Although the availability of equitable tolling "is fundamentally a question of statutory intent," the Supreme Court presumes that Congress intended that equitable tolling would be available "if the period in question is a statute of limitations and if tolling is consistent with the statute." *Id.* at 1232; *see also Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that

limitations periods are customarily subject to equitable tolling." (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990) (internal quotation marks omitted)). The presumption that Congress intended to allow equitable tolling of a statute of limitations does not apply, however, if the time period in question is not a statute of limitations. *Lozano*, 134 S.Ct. at 1234 ("[W]e have only applied that presumption to statutes of limitations."); *see also CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014) (distinguishing between statutes of limitations, which are subject to equitable tolling, and statutes of repose, which are not).

In determining whether a time period set by federal law is a statute of limitations, the Court considers the "functional characteristics" of the statute, that is, whether the time period at issue serves the policies of a statute of limitations. *Lozano*, 134 S. Ct. at 1234–35 & n.6. A statute of limitations is generally "[a] law that bars claims after a specified period; specifically, a statute establishing a time limit for suing in a civil case, based on the date when the claim accrued (as when the injury occurred or was discovered)." Black's Law Dictionary 1636 (10th ed. 2014); *see also CTS Corp.*, 134 S. Ct. at 2182 (holding that "a statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued") (quoting Black's Law Dictionary 1546 (9th ed. 2009)) (internal quotation marks omitted)). Statutes of limitations serve the policies of "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Young*, 535 U.S. at 47 (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (internal quotation marks omitted)); *Lozano*, 134 S. Ct. at 1234. By setting a deadline for bringing a claim, statutes of limitations encourage "plaintiffs to pursue diligent prosecution of known claims," *CTS Corp.*, 134 S. Ct.

at 2183 (internal quotation marks omitted), and thereby "protect defendants against stale or unduly delayed claims," *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008); *see also Aloe Vera of Am., Inc. v. United States*, 580 F.3d 867, 871 (9th Cir. 2009).

In considering the functional characteristics of federal statutes that provide a time period in which some action must be taken, the Court has focused on whether the time period serves the main goal of a statute of limitations: encouraging plaintiffs to prosecute their actions promptly or risk losing rights. In *Young*, the Court considered the three-year period in 11 U.S.C. §§ 507(a)(8)(A)(I)[3] and 523(a)(1)(A),[4] which provide that a claim by the IRS for tax liabilities is nondischargeable if the tax return was due within three years before the bankruptcy petition was filed. *Young*, 535 U.S. at 46. The Court concluded that the statute encourages the IRS

---

[3] Section 507(a)(8)(A) states:

> (a) The following expenses and claims have priority in the following order: . . . (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—(i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition.

[4] Section 523(a)(1)(A) states:

> Exceptions to discharge (a) A discharge under [select provisions of the Bankruptcy Code] does not discharge an individual debtor from any debt—(1) for a tax or customs duty—(A) of the kind and for the periods specified in . . . 507(a)(8) of this title . . . .

to pursue its rights before three years have elapsed, because if the IRS sleeps on its rights and fails to prosecute its claims for taxes within three years, it cannot enforce those claims against bankrupt tax payers. *Id.* at 47. Because the statute encourages the IRS to pursue its rights before three years have elapsed, the Court held that the three-year period "serves the same basic policies furthered by all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities." *Id.* (quoting *Rotella*, 528 U.S. at 555); *Lozano*, 134 S. Ct. at 1234–35 (discussing *Young*). Accordingly, the Court held that the three-year period in § 507(a)(8)(A)(i) is a statute of limitations presumptively subject to equitable tolling. *Young*, 535 U.S. at 47–49.

By contrast, in *Hallstrom v. Tillamook County*, the Court concluded that an environmental provision prohibiting a civil action to be commenced "prior to sixty days after the plaintiff has given notice of the violation" to the appropriate persons was not a statute of limitations because it was "not triggered by the violation giving rise to the action." 493 U.S. 20, 25, 27 (1989). Thus, the statute did not encourage a plaintiff to timely file a claim or risk losing rights. And because it was not a statute of limitations, equitable tolling did not apply. *Id.* at 27. Similarly, in *Lozano v. Montoya Alvarez*, the Court considered a treaty provision providing that "[w]hen a parent abducts a child and flees to another country," that country must "return the child immediately if the other parent requests return within one year." 134 S. Ct. at 1228. The expiration of the one-year period did not cut off any rights held by the left-behind parent; it merely allowed a court to consider the child's interests as well as the parent's. *Id.* at 1234–35. Because the one-year period only addressed policy issues that were "not the sort of interest addressed by a statute

of limitations," the Court held that it was not a statute of limitations, and it was therefore not subject to equitable tolling. *Id.* at 1235–36.

B

We now turn to the question whether § 727(a)(2)(A) is a statute of limitations that is subject to the presumption that equitable tolling is available. To do so, we begin by considering the "functional characteristics" of § 727(a)(2)(A), *Lozano*, 134 S. Ct. at 1235 n.6, and whether this statute serves the policies of "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities," *Young*, 535 U.S. at 47.

Section 727(a)(2) denies a debtor a discharge from any claims where the debtor misused the bankruptcy process by, among other things, transferring assets "with intent to hinder, delay, or defraud a creditor." As such, the purpose of this exception to discharge is to prevent dishonest debtors from "seeking to abuse the bankruptcy system in order to evade the consequences of their misconduct." *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d. 662, 666 (9th Cir. 2014) (internal quotation marks omitted). The penalty imposed by this exception is designed to motivate the debtor to reveal assets and keep or recover property for the estate. *See In re Adeeb*, 787 F.2d 1339, 1345 (9th Cir. 1986).

Unlike a statute of limitations, the § 727(a)(2) exception to discharge is not designed to encourage a specific creditor to prosecute its claim promptly to avoid losing rights, and it does not serve the purposes of "repose, elimination of stale claims," and certainty. *Young*, 535 U.S. at 47. While the statutes considered in *Young* encouraged the government to

file its claims no later than three years after those claims accrued (in order to ensure the claims would be nondischargeable in any subsequent bankruptcy), § 727(a)(2) does not encourage (or require) a creditor to take any action at all. Because the improper conduct that triggers the one-year period in § 727(a)(2) may be conducted secretly without creditors' knowledge, the one-year period does not give creditors an opportunity to protect their rights. *Cf. Hallstrom*, 493 U.S. at 27 (stating that a time period that is not triggered by any violation giving rise to the plaintiff's cause of action is not a statute of limitations subject to equitable tolling). If anything, the application of § 727(a)(2) detracts from the goals of statutes of limitations, because by precluding the discharge of all debts, it provides a windfall to creditors who have slept on their rights. In short, the one-year time period does not cut off creditors' rights, and it addresses policy issues that are "not the sort of interest addressed by a statute of limitations," *Lozano*, 134 S. Ct. at 1234–35. We therefore conclude that § 727(a)(2) is not a statute of limitations.

Because § 727(a)(2) is not a statute of limitations, it is not subject to a presumption of equitable tolling. Without such a presumption, and without any statutory language suggesting Congress's intent to make equitable tolling available, we conclude that equitable tolling is not applicable. "At the core of the Bankruptcy Code are the twin goals of ensuring an equitable distribution of the debtor's assets to his creditors and giving the debtor a 'fresh start.'" *Sherman v. SEC (In re Sherman)*, 658 F.3d 1009, 1015 (9th Cir. 2011), *abrogated on other grounds by Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013). In enacting § 727(a)(2), Congress chose to impose a significant penalty—completely depriving a debtor of a fresh start—only for fraudulent conduct that occurred "within one year before the date of the filing of the petition."

§ 727(a)(2). By referring to "the petition," the statutory
language makes clear that the one year period commences
before the filing of the particular petition for bankruptcy in
that case.

DeNoce argues that we should apply equitable tolling
because otherwise a debtor could make an improper transfer
of assets, then file and dismiss successive Chapter 13 cases
until more than a year had passed from the date of the
improper transfer, and finally file a Chapter 7 case, allowing
the debtor to defeat the protection given to creditors under
§ 727(a)(2)(A). We disagree. While Congress could
reasonably have concluded that the debtor should be deprived
of a fresh start if the fraudulent conduct occurred within one
year of the first of a series of bankruptcy filings, nothing in
the language of § 727(a)(2) suggests it chose to adopt that
approach. Recognizing the Bankruptcy Code's "fresh start"
policy, the Supreme Court "has interpreted exceptions to the
broad presumption of discharge narrowly." *Hawkins*,
769 F.3d. at 666. In light of this canon of interpretation, and
in the absence of any statutory language indicating a
congressional intent to make equitable tolling available in this
context, we conclude that Congress did not intend to toll the
one-year period for successive bankruptcy filings.[5] In
reaching this conclusion, we agree with the reasoning of the
Fourth Circuit, which concluded that a similar exemption
from discharge, § 727(a)(8), was not a statute of limitations.

---

[5] As we have noted, after the bankruptcy court was advised of the
allegedly fraudulent transfer of the Lake Harbor property, Neff was
required to transfer the property back to himself. As a result, DeNoce and
other creditors have not been deprived of the opportunity to collect against
that asset, and Neff has not gained a windfall.

*See Tidewater Fin. Co. v. Williams*, 498 F.3d 249 (4th Cir. 2006).**[6]**

Because the transfer of the Lake Harbor property took place more than one year before Neff filed his Chapter 7 bankruptcy petition and § 727(a)(2) is not subject to equitable tolling, Neff was not precluded from discharge of his debts under § 727(a)(2).**[7]**  The bankruptcy court therefore properly granted summary judgment to Neff on this issue.

**AFFIRMED.**

---

**[6]** We disagree with the district court's reasoning in *Womble v. Pher Partners*, 299 B.R. 810 (N.D. Tex. 2003) (affirming the bankruptcy court's determination that § 727(a)(2) is a statute of limitations subject to equitable tolling) *aff'd In re Womble*, 108 F. App'x 993 (5th Cir. 2004). *Womble* concluded that "[t]he similarities between § 507(a)(8)(i), the IRS three-year provision at issue in *Young*, and § 727(a)(2)(A) dictate similar treatment."  *Id.* at 812.  As we have explained, the exemption in § 507(a)(8)(i) is aimed at encouraging the timely filing of claims, and therefore is not analogous to § 727(a)(2)(A), which is aimed at penalizing improper conduct.

**[7]** Because we decide the case on this basis, we need not address Neff's alternative argument that his property was not "transferred" for purposes of § 727(a)(2)(A) because he transferred the property back to himself before filing the Chapter 7 petition, *see In re Adeeb*, 787 F.2d 1339 (9th Cir. 1986); *but see In re Beauchamp*, 236 B.R. 727 (B.A.P. 9th Cir. 1999) *aff'd*, 5 F. App'x 743 (9th Cir. 2001).