FILED

FEB 04 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No.  CC-13-1041-KiTaD |
| | ) | |
| RONALD A. NEFF, | ) | Bk. No.   1:11-bk-22424-VK |
| | ) | |
| Debtor. | ) | Adv. No.  1:12-ap-01027-VK |
| | ) | |
| _____ | ) | |
| | ) | |
| DOUGLAS J. DeNOCE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **O P I N I O N** |
| | ) | |
| RONALD A. NEFF, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| _____ | ) | |

Submitted Without Oral Argument
on November 21, 2013

Filed - February 4, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

Appearances:    Patrick L. Swanstrom, on brief for appellant
                Douglas J. DeNoce; Michael D. Kwasigroch on brief,
                for appellee Ronald Neff.

Before:  KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Creditor, Douglas J. DeNoce ("DeNoce"), appeals the orders granting partial summary judgment to chapter 7[1] debtor, Ronald A. Neff ("Neff"), and denying DeNoce's cross-motion for partial summary judgment. Approximately eighteen months before Neff filed the instant chapter 7 case, he had filed the first of two successive chapter 13 cases, both of which were dismissed. During the course of his first chapter 13 case and about seventeen months before he filed the instant chapter 7 case, Neff transferred certain real property to his revocable living trust. DeNoce contended that the transfer was fraudulent and sought to deny Neff's discharge under § 727(a)(2). The bankruptcy court held that Neff's discharge would not be denied, because any alleged fraudulent transfer occurred more than one year before the chapter 7 petition was filed, and the one-year "lookback" period was not subject to equitable tolling based on Neff's prior bankruptcies. Accordingly, it granted partial summary judgment to Neff on that issue and denied it as to DeNoce.

The issue presented here is a matter of first impression in this circuit: Whether the one-year "lookback" period in § 727(a)(2)(A) is a "statute of limitations" subject to equitable tolling or whether it is a "statute of repose" not subject to equitable tolling. We hold that the one-year period is a statute

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "Civil Rules."

of repose, and we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Events leading to Neff's first bankruptcy case

In 2007, Neff, a former dentist,[2] treated DeNoce[3] with the surgical placement of eight dental implants. It was a major full-day surgery. Within a month or so, each tooth had either fallen out or failed. Neff performed further surgery to correct the eight implants, but, within a couple of months, each fell out or failed again. DeNoce still apparently suffers from the improper implant procedures. In October 2008, DeNoce filed suit against Neff in state court for medical malpractice. Ultimately, DeNoce was awarded a judgment of $310,000.

In March 2008, a few months prior to DeNoce's filing of the medical malpractice action, Neff executed a revocable living trust (the "Retirement Trust"). The trust res consisted solely of certain real property (the "Lake Harbor Property"), which Neff had owned since 1978. According to Neff, after executing the Retirement Trust at his attorney's office, he was sent home to prepare a quitclaim deed transferring the Lake Harbor Property from himself to the Retirement Trust. It is undisputed, however, that the quitclaim deed was not recorded until two years later, on April 7, 2010.

### B. The first bankruptcy case

Neff filed his first chapter 13 bankruptcy case on March 4,

---

[2] Neff's dental license was revoked by the California dental board in January 2010 due to his substance abuse and other issues.

[3] DeNoce, a former attorney, was disbarred by the California State Bar in 1997.

-3-

2010 (the "First Bankruptcy Case"). It was dismissed on April 9, 2010, for Neff's failure to appear at the scheduled § 341(a) meeting of creditors.

## C.   The second bankruptcy case

Neff filed his second chapter 13 bankruptcy case two months later on June 18, 2010 (the "Second Bankruptcy Case"). In his Schedule B, Neff reported that the Retirement Trust owned the Lake Harbor Property. He did not disclose the recent transfer of it to the Retirement Trust in Question 10 of his Statement of Financial Affairs ("SOFA").

During the Second Bankruptcy Case, the bankruptcy court became aware of the transfer of the Lake Harbor Property and the fact that the transfer occurred during the First Bankruptcy Case. Facing resultant dismissal, Neff agreed to record a quitclaim deed transferring the Lake Harbor Property back to himself. He thereafter filed an amended SOFA, reporting both the initial and subsequent transfers.

In September 2010, DeNoce moved to dismiss Neff's Second Bankruptcy Case for bad faith, contending, among other things, that the transfer of the Lake Harbor Property to the Retirement Trust during the course of his First Bankruptcy Case was fraudulent.[4] After four days of evidentiary hearings on the matter, Neff agreed to withdraw his opposition to the motion to dismiss as long as he was not barred from filing a chapter 7 case.

---

[4] About one year later, on September 27, 2011, the chapter 13 trustee also moved to dismiss Neff's Second Bankruptcy Case for a variety of reasons, including an objection to Neff's use of the Lake Harbor Property as a retirement vehicle and the fact that Neff had insufficient income to fund a plan.

The bankruptcy court accepted his withdrawal and orally granted DeNoce's motion dismissing the Second Bankruptcy Case. It entered the related order on November 14, 2011.

While the motion to dismiss the Second Bankruptcy Case was pending, DeNoce had filed a first amended nondischargeability complaint against Neff on July 22, 2011, seeking to except his debt from discharge under § 523(a)(6). However, once Neff's Second Bankruptcy Case was dismissed, DeNoce's § 523 action also was dismissed.

**D.    Neff's third bankruptcy case and the § 727 action**

Neff filed a third bankruptcy case under chapter 7 on October 24, 2011 (the "Third Bankruptcy Case"), before the order dismissing the Second Bankruptcy Case was entered on November 14.

DeNoce filed a complaint seeking to deny Neff's discharge under § 727(a)(2) (the "727 Complaint"). DeNoce contended that the transfer of the Lake Harbor Property into the Retirement Trust and Neff's acts and schemes to conceal it were fraudulent and done with the intent to avoid paying his creditors' claims. Neff's answer denied the allegations and asserted several affirmative defenses, including that the 727 Complaint failed to state a claim for which relief could be granted and that it was barred by all applicable statutes of limitations.

Neff later moved for partial summary judgment on DeNoce's claim under § 727(a)(2)(A) (the "PSJ Motion") on the basis that the transfer of the Lake Harbor Property into the Retirement Trust, which occurred on April 7, 2010, was more than one year prior to the filing of the Third Bankruptcy Case on October 24, 2011. Alternatively, the date upon which Neff transferred the

-5-

Lake Harbor Property back into his name — August 4, 2010 — was still more than one year prior to the filing of the Third Bankruptcy Case. Therefore, argued Neff, DeNoce's claim could not support a denial of discharge, and he was entitled to discharge notwithstanding § 727(a)(2)(A) as a matter of law.

DeNoce opposed the PSJ Motion and filed a cross-motion for partial summary judgment ("PSJ Cross-Motion"), contending he was entitled to judgment on his claims under § 727(a)(2)(A) and (B). DeNoce contended that the one-year limitation did not apply because Neff had filed three consecutive bankruptcy cases, and so the actual bankruptcy "process" started with his First Bankruptcy Case in March 2010. Thus, he argued that the "postpetition" transfer on April 7, 2010, supported a claim under § 727(a)(2)(B). Alternatively he argued that since the transfer occurred within one year prior to his Second Bankruptcy Case filed on June 18, 2010, it supported a claim under § 727(a)(2)(A). Finally, DeNoce contended that the one-year limitation did not apply because Neff continued to conceal the transfer, claiming it as an exempt retirement asset up until the day before he filed his PSJ Motion.

The bankruptcy court held a hearing on the PSJ Motion on July 11, 2012.[5] After some preliminary argument by the parties, the court ruled that the one-year provision in § 727(a)(2)(A) was a statute of repose and not subject to equitable tolling. Hence, assuming that the transfer occurred when the quitclaim deed transferring the Lake Harbor Property from Neff to the Retirement

---

[5] Because DeNoce had not properly set the PSJ Cross-Motion for hearing, the bankruptcy court did not hear that motion until August 22, 2012. It is not entirely clear what happened after that, but the PSJ Cross-Motion was ultimately denied.

Trust was recorded on April 7, 2010, that was more than one year prior to the filing of the Third Bankruptcy Case and could not be the basis for a claim under § 727(a)(2)(A). Therefore, because the initial transfer occurred outside the statutory period, Neff would not be denied a discharge.

An order granting the PSJ Motion was entered on August 10, 2012 (the "PSJ Order").

DeNoce timely filed a motion to reconsider the PSJ Order, which the bankruptcy court denied. The only issue before it was whether the one-year "lookback" period in § 727(a)(2)(A) is a statute of repose or a statute of limitations subject to equitable tolling. Noting the lack of any controlling authority on the matter, the bankruptcy court reviewed Womble v. Pher Partners (In re Womble), 299 B.R. 810 (N.D. Tex. 2003), aff'd on other grounds, 108 F. App'x 993 (5th Cir. 2004) ("Womble"), which, relying upon Young v. United States, 535 U.S. 43 (2002), held that the one-year period in § 727(a)(2)(A) is a limitation period that can be equitably tolled, and a Fourth Circuit case, Tidewater Fin. Co. v. Williams (In re Williams), 498 F.3d 249, 257 (4th Cir. 2007) (2-1 decision) ("Tidewater"), which criticized Womble and held that the eight-year lookback period for denial of discharge under § 727(a)(8) is a statute of repose not subject to equitable tolling. The bankruptcy court found Tidewater's analysis more convincing and reasoned that the one-year period in § 727(a)(2)(A) was more akin to the period in § 727(a)(8) than the three-year lookback period in § 523(a)(1)(A) and § 507(a)(8)(A), the statutes at issue in Young. Consequently, the bankruptcy court held that § 727(a)(2)(A) represents a statute of repose that is not subject

to equitable tolling.

DeNoce's remaining claims for relief on his 727 Complaint were later dismissed without prejudice to his right to appeal the PSJ Order.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.[6]

## III. ISSUE

Did the bankruptcy court err in granting the PSJ Motion and denying the PSJ Cross-Motion? Specifically, did it err in ruling that the one-year "lookback" period in § 727(a)(2)(A) is a statute of repose not subject to equitable tolling?

## IV. STANDARDS OF REVIEW

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the

---

[6] Generally, orders granting partial summary without the certification required by Civil Rule 54(b) are interlocutory orders. Belli v. Temkim (In re Belli), 268 B.R. 851, 856-57 (9th Cir. BAP 2001). "Unlike final orders, interlocutory orders decide merely one aspect of the case without disposing of the case in its entirety on the merits." Thomas J. Salerno & Jordan A. Kroop, Bankruptcy Litigation & Practice: A Practitioner's Guide § 3.16[B], at 3-63 (4th ed. rev'd 2007-2013); see also United States v. 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2008). The bankruptcy court granted the PSJ Motion only as to DeNoce's claim under § 727(a)(2)(A). However, once the bankruptcy court dismissed the 727 Complaint, the PSJ Order became a final appealable order. Dannenberg v. Software Toolworks, Inc., 16 F.3d 1073, 1075 (9th Cir. 1994) (judgments whose finality would normally depend upon a Civil Rule 54(b) certification may be treated as final and appealable if remaining claims subsequently have been finally resolved).

-8-

rules de novo.  Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006). The bankruptcy court's interpretation of § 727(a)(2)(A) is a legal conclusion we review de novo.  See B-Real, LLC v. Chaussee (In re Chaussee), 399 B.R. 225, 229 (9th Cir. BAP 2008).

We review an order granting summary judgment de novo and are bound by the same principles as the bankruptcy court.  Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013).  Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Civil Rule 56(a), incorporated by Rule 7056.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of a material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## V. DISCUSSION

**A.   Governing law**

Section 727(a)(2)(A) provides, in relevant part, that the bankruptcy court must deny discharge if, "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . (A) property of the debtor, within one year before the date of the filing of the petition."  The burden of proof is on the objector to show by a preponderance of the evidence that (1) the debtor transferred or concealed property, (2) the property belonged to the debtor, (3) the transfer occurred within one year of the bankruptcy

-9-

filing, and (4) the debtor executed the transfer with the intent to hinder, delay or defraud a creditor. Aubrey v. Thomas (In re Aubrey), 111 B.R. 268, 273 (9th Cir. BAP 1990). "[A]cts and intentions occurring prior to this period will be forgiven." Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997) (citing Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993)). Section 727 is to be construed liberally in favor of debtors and strictly against the creditor. First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986).

**B. Statutory language of § 727(a)(2)(A)**

We start, as with any other statutory argument, by reviewing the language of the statute. Lamie v. United States Tr., 540 U.S. 526, 534 (2004). "[W]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." Id. (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000)) (other citations omitted). A court must consider "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).

In reviewing the language of § 727(a)(2)(A), it does not expressly provide for tolling as do some other Bankruptcy Code sections, such as § 108, which extends the statutes of limitations for the benefit of trustees and creditors preserving claims impacted by the bankruptcy filing, and § 507(a)(8)(A), which tolls

certain lookback periods for tax claims under § 523(a)(1).[7] Nonetheless, DeNoce argues that not tolling the one-year period in § 727(a)(2)(A) is inequitable, because a debtor could file successive chapter 13 cases, dismiss them, and then file a chapter 7 case once the one-year period has expired to avoid denial of discharge.[8]

## C. Statutes of repose versus statutes of limitations

"A statute of limitations creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued, often subject to tolling principles." Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 88 n.4 (2d Cir. 2010) (citing Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998); P. Stolz Family P'ship v. Daum, 355 F.3d 92, 102-03 (2d Cir. 2004)). "By contrast, a statute of repose extinguishes a plaintiff's cause of action after the passage of a fixed period of time, usually measured from one of the defendant's acts." Id. (citing P. Stolz Family P'ship, 355 F.3d at 102-03). In other words, a statute of limitations sets a time limit for bringing an action; a statute of repose sets a time period in which an event giving rise to a claim for relief must occur.

A statute of repose "bar[s] any suit that is brought after a specified time since the defendant acted . . . even if this period

[7] Section 507(a)(8)(A)(ii)(II) was codified in 2005 as a result of the Supreme Court's ruling in Young v. United States, 535 U.S. 43 (2002).

[8] We note that DeNoce was never precluded from pursuing a nondischargeability action against Neff under § 523 in any of the three bankruptcy cases, which he did, to no avail.

-11-

ends before the plaintiff has suffered a resulting injury." BLACK'S LAW DICTIONARY 1451 (8th ed. 2004) (emphasis added). Statutes of repose are not concerned with the plaintiff's diligence; they are concerned with the defendant's peace. Underwood Cotton Co. v. Hyundai Merch. Marine (Am.), Inc., 288 F.3d 405, 409 (9th Cir. 2002). "Put more bluntly, there is a time when allowing people to put their wrongful conduct behind them — and out of the law's reach — is more important than providing those wronged with a legal remedy, even if the victims never had the opportunity to pursue one." Lyon v. Aquilar (In re Aquilar), 470 B.R. 606, 614 (Bankr. D.N.M. 2012) (quoting In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 200 (3d Cir. 2007)).

Equitable tolling applies only to limitations periods. See Young, 535 U.S. at 49; Tidewater, 498 F.3d at 254. A statute of limitations subject to equitable tolling has two common characteristics: (1) the statute provides a plaintiff with a specified period of time within which to pursue a claim to preserve a remedy; and (2) such period begins when the plaintiff has or discovers he has a complete and present claim. Tidewater, 498 F.3d at 255-56 (citing Young, 535 U.S. at 47-49); In re Aquilar, 470 B.R. at 615; In re Maas, 416 B.R. 767, 769-70 (Bankr. D. Kan. 2009). "When these two circumstances exist, a court will often toll a period if it concludes that equitable considerations excuse a plaintiff's failure to take the required action within the time period." Tidewater, 498 F.3d at 256 (citing Young, 535 U.S. at 50-51). See Tidewater Fin. Co. v. Williams (In re Williams), 341 B.R. 530, 533 (D. Md. 2006) ("The doctrine of equitable tolling 'permits a court to suspend the measuring period

-12-

for a party to take action during the time the party was unable to act.'") (quoting In re Williams, 333 B.R. 68, 71 (Bankr. D. Md. 2005)).

Equitable tolling is inconsistent with statutes of repose. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991). "Statutes of repose do not start to run when the plaintiff has or discovers he has an action. Rather, the statutes set an outside limit as to when the cause of action can accrue in the first place." In re Aguilar, 470 B.R. at 615 (citing In re Maas, 416 B.R. at 771).

Section 727(a)(2)(A) does not share either one of the required characteristics of a statute of limitations. It does not provide a creditor with a specified period of time for pursuing a claim to preserve a remedy, and the one-year period is not dependent on the discovery or accrual of a claim. Rather, the one-year period is based on when the debtor files the bankruptcy petition.

**D.  Analysis**

Nonetheless, our inquiry does not stop here, as some courts have found that certain "lookback" periods in the Bankruptcy Code, including the one-year period in § 727(a)(2)(A), are a limitations period that can be tolled for the reasons argued by DeNoce. The only published decision squarely addressing this issue with respect to § 727(a)(2)(A) is Womble.

In Womble, the district court affirmed the bankruptcy court's decision to apply equitable tolling to § 727(a)(2)(A) and agreed that Young compelled this outcome. 299 B.R. at 812-13. In Young, which DeNoce contends is controlling, debtors failed to include

-13-

payment with their 1992 federal income tax return, due and filed on October 15, 1993. 535 U.S. at 44-45. They filed a chapter 13 bankruptcy case on May 1, 1996, still owing the bulk of their $15,000 tax debt. Id. at 45. Debtors moved to dismiss that case on October 23, 1996. One day before the bankruptcy court dismissed it, on March 12, 1997, debtors filed a second bankruptcy case, this time under chapter 7. Debtors received a discharge in June 1997, and the chapter 7 case was closed in September 2007. Upon the IRS's subsequent demand for payment of the 1992 tax debt, debtors moved to reopen their chapter 7 case to have the debt declared discharged. They contended that the tax debt fell outside the three-year lookback period in §§ 507(a)(8)(A)[9] and 523(a)(1)(A),[10] and therefore had been discharged, because it

---

[9] Section 507(a)(8) provides, in relevant part:

The following expenses and claims have priority in the following order:
(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition—
    (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
    (ii) assessed within 240 days before the date of the filing of the petition, exclusive of—
        (I) any time during which an offer in compromise with respect to that tax was pending or in effect during that 240-day period, plus 30 days; and
        (II) any time during which a stay of proceedings against collections was in effect in a prior case under this title during that 240-day period, plus 90 days[.]

[10] Section 523(a)(1)(A) provides: "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt — (1) for a tax or a customs duty — (A) of the kind and for the periods specified in
(continued...)

-14-

pertained to a tax return due on October 15, 1993, more than three years before their chapter 7 filing on March 12, 1997. The bankruptcy court reopened the case and ruled for the IRS, holding that the lookback period was "tolled" during the pendency of the prior chapter 13 case and, therefore, the 1992 tax debt was not discharged. The district court and Fifth Circuit agreed. Id.

Concluding that the terms of the lookback period created a "loophole" in the law, the Supreme Court held that the three-year period in § 507(a)(8)(A)(i) was a limitations period subject to equitable tolling, "because it prescribe[d] a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced" by the claimant. Id. at 47. This was true regardless of "whether the [prior] petition was filed in good faith or solely to run down the lookback period." Id. at 50. The Court noted that, like other statutes of limitations, the three-year period at issue "commence[d] when the IRS ha[d] a complete and present cause of action" — i.e., the date the taxpayer's return was due. Id. at 49.

In Womble, the debtor filed a chapter 13 bankruptcy case in July 2000 that was converted to chapter 11, then to chapter 12, and ultimately dismissed in November 2001. 299 B.R. at 811. One month after the dismissal, the debtor filed a second bankruptcy case, this time under chapter 7. Contending that certain transfers occurring in June and July 2000 were fraudulent within the meaning of the statute, a judgment creditor sought to deny

[10](...continued)
section 507(a)(3) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed."

-15-

debtor's discharge under § 727(a)(2)(A). Relying on <u>Young</u>, the bankruptcy court ruled in favor of the creditor, holding that the one-year period was "equitably tolled" due to the prior bankruptcy. In affirming the bankruptcy court, the district court reasoned that the "similarities between § 507(a)(8)[A](i) . . . and § 727(a)(2)(A) dictate similar treatment" because "both reference 'the date of the filing of the petition,' and both act as limitations periods, requiring creditors to promptly protect their rights or risk having a debt discharged in bankruptcy." <u>Id.</u> at 812. <u>See also</u> <u>In re Seeber</u>, 2005 WL 4677823 (Bankr. E.D. La. July 5, 2005); <u>In re Riley</u>, 2004 WL 2370640 (Bankr. D. Haw. Apr. 20, 2004) (both reviewing the one-year period in § 727(a)(2)(A) and citing <u>Womble</u> with approval).

We disagree with <u>Womble</u>. While both statutes contain the phrase "the date of the filing of the petition," their similarities end there. The one-year period in § 727(a)(2)(A) does not apply to any one creditor as do §§ 507(a)(8)(A) and 523(a)(1)(A). Further, § 727(a)(2) is not designed to protect the rights of any one creditor or class of creditors. They simply are not the intended beneficiaries of the statute.

Sections 523 and 727 serve two entirely different purposes. The purpose of § 523 is to except certain specified debts of a debtor from discharge. The purpose of § 727 is to deny the discharge of all debts based upon a debtor's wrongful conduct in connection with the bankruptcy case. Section 727 is not concerned with protecting an individual creditor's claims from being discharged due to inaction. And, it certainly has nothing to do with priority. Further, claims for nondischargeable debts under

-16-

§ 523 apply to all debtors, regardless of chapter. See 11 U.S.C. § 103(a). Conversely, § 727 applies only to chapter 7 debtors. See 11 U.S.C. § 103(b).

In In re Riley, an unpublished decision out of Hawaii, the bankruptcy court, relying on Young and Womble, held that the one-year period in § 727(a)(2) is a limitations period because "'it prescribes a period within which certain rights (namely, priority and nondischargeability in bankruptcy) may be enforced.'" 2004 WL 2370640, at *4 (quoting Young, 535 U.S. at 46). For the reasons stated above, we disagree with In re Riley, and further note its lack of analysis. The same is true for In re Seeber, also an unpublished decision, which engaged in even less analysis and simply cited Womble to hold that "the one year lookback period found in § 727(a)(2)(A) is tolled during the pendency of the period of a previous bankruptcy case." 2005 WL 4677823, at *4.

The Fourth Circuit also has disagreed with Womble and questioned whether Young applies in cases under § 727. In Tidewater, a judgment creditor sought to deny the debtor's discharge under § 727(a)(8)[11] in her latest chapter 7 case on the theory that her intervening and dismissed chapter 13 cases, filed between the dates of her prior chapter 7 discharge order and her latest petition, had equitably tolled the six-year bar on the debtor from filing a chapter 7 case and getting another discharge. 498 F.3d at 253. The Fourth Circuit, declining to apply Young as statutorily distinguishable, held that the six-year lookback

[11] Section 727(a)(8) provides, in relevant part: "The court shall grant the debtor a discharge, unless — the debtor has been granted a discharge under this section . . . in a case commenced within 8 years before the date of the filing of the petition[.]"

-17-

period (now eight years) in § 727(a)(8) was not a statute of limitations subject to equitable tolling. Id. at 258. Specifically, the court found that § 727(a)(8) does not contain the two required characteristics for a limitations period — it does not prescribe a period of time within which a plaintiff must pursue a claim, and the time period did not commence when creditor Tidewater had a complete and present claim for relief. Id. at 256. The Tidewater court was concerned about the lack of analysis in Womble, particularly, why the language "the date of the filing of the petition" should automatically be interpreted as a limitations provision. Id. at 256 n.7.

Although one could argue that § 727(a)(8) and § 727(a)(2) serve different purposes, they do share one important similarity — neither expressly provides for tolling and neither contains the two required characteristics for a limitations period which can be equitably tolled. Therefore, we find the reasoning in Tidewater persuasive and agree that Young does not control the outcome here. We are particularly persuaded by the following discussion from the district court in Tidewater and believe it applies equally to § 727(a)(2)(A):

> [I]f equitable tolling were applied to § 727(a)(8), every debt encompassed by a debtor's Chapter 7 petition — not just the debt of the single creditor seeking equitable tolling — would not be discharged. Thus, potentially numerous creditors would unwittingly and perhaps undeservedly benefit from relief granted to a single creditor. This situation seems inconsistent with Congress' determination that specific categories of debt are excepted from discharge under § 727(b) and § 523, and effectively "convert[s] the disqualifications of a debtor from a discharge into a dischargeability test for particular claims."

341 B.R. at 537-38 (quoting In re Williams, 333 B.R. at 74). In

-18-

other words, equitable tolling of § 727(a)(2)(A) is "inconsistent with the text of the relevant statute," and thus should not be applied. See Young, 535 U.S. at 49 (quoting United States v. Beggerly, 524 U.S. 38, 48 (1998).

Other support exists for our holding here, but these courts were also short on analysis. See Melancon v. Jones (In re Jones), 292 B.R. 555, 560 (Bankr. E.D. Tex. 2003) (post-Young case; holding that creditor could not "reach back" to debtor's prior bankruptcy filing to circumvent the one-year period under § 727(a)(2)(A), because the effect of dismissal of the prior bankruptcy case was to nullify it); U.S. Fid. & Guar. Co. v. Hogan (In re Hogan), 208 B.R. 459, 463 n.3 (Bankr. E.D. Ark. 1997) (pre-Young case; recognizing that no Code provision or nonbankruptcy law "suspended" the one-year period in § 727(a)(2)(A); however, the chapter 7 trustee may still be able to avoid any fraudulent transfers under § 544(b)).

DeNoce contends that if courts refuse to apply the equitable tolling doctrine to § 727(a)(2)(A), debtors will inequitably be allowed to take advantage of a "loophole" by filing successive chapter 13 bankruptcy cases, then filing a chapter 7 bankruptcy case after the one-year period has expired. The district court in Tidewater responded best to this argument:

> Congress decided not to address any alleged 'loophole' with respect to the relation between the serial filing of Chapter 13 cases and the discharge of a second Chapter 7 case in its recent restructuring of the Bankruptcy Code. See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8 (2005)["BAPCPA"]. It is not the role of this Court to override decisions already made by Congress with respect to the discharge of a Chapter 7 debtor.

341 B.R. at 538-39. We agree that if this alleged "loophole" in

§ 727(a)(2)(A) was of concern to Congress, it would have been addressed with BAPCPA, as was the "loophole" found by the Supreme Court in Young with the codification of § 507(a)(8)(A)(ii)(II).

We also disagree with DeNoce's argument that the doctrine of "continuing concealment" applies in this case. Under this doctrine, discharge can be denied under § 727(a)(2)(A), even though the subject transfer occurred more than one year before the debtor filed bankruptcy, if the debtor allowed his or her interest in the property to remain concealed into the year preceding the bankruptcy filing. In re Lawson, 122 F.3d at 1240. "Concealment" in this sense focuses on the debtor's intent to conceal any "interest" in the transferred property into the year before the bankruptcy filing, not whether the debtor intended to conceal "the transfer." Id. Although Neff did not initially disclose the transfer of the Lake Harbor Property in his first two bankruptcy cases, no concealment of his "interest" in it occurred into the year before he filed his Third Bankruptcy Case, thereby triggering the doctrine. Within the year before he filed his third case, title to the Lake Harbor Property was in his name only as a matter of public record. Although the quitclaim deed stated that "Grantee asserts this is an exempt asset under California law as a retirement asset or plan," Neff's failed attempt at trying to preserve the property as an exempt retirement asset did nothing to change the title or his 100% fee interest, as the bankruptcy court correctly noted. As such, no "concealment" occurred within the meaning of the doctrine.

Contrary to DeNoce's contention, the "continuing concealment" doctrine is not analogous to an "equitable tolling" of the

-20-

one-year period in § 727(a)(2)(A), and therefore our decision here is not contrary to In re Lawson. The doctrine is not a "tolling" of the statute. Rather, it applies only when the offending conduct — debtor's intentional concealment of an interest in transferred property — has been ongoing into the year prior to the debtor's bankruptcy filing. Thus, nothing is being "tolled" with respect to the one-year period.

Because § 727(a)(2)(A) is a statute of repose not subject to equitable tolling, DeNoce could not prove one of the necessary elements to deny Neff's discharge — that the transfer of the Lake Harbor Property occurred within one year of the filling of Neff's Third Bankruptcy Case. Accordingly, the bankruptcy court did not err when it determined that no genuine issue of material fact existed and that Neff was entitled to summary judgment as a matter of law. Likewise, because the subject transfer occurred more than one year prior to the filing of Neff's Third Bankruptcy Case, it obviously could not have occurred postpetition. Hence, DeNoce had no claim under § 727(a)(2)(B), and the bankruptcy court did not err in denying his PSJ Cross-Motion.[12]

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.

---

[12] We note that even if § 727(a)(2)(A) were subject to equitable tolling, it would be inappropriate to apply that doctrine here because DeNoce relentlessly sought and obtained the dismissal of Neff's Second Bankruptcy Case, which forced Neff to then file a third one.

-21-