**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>CATHERINE OLSEN,<br><br>　　　　　Debtor.<br>_____<br>CATHERINE OLSEN,<br><br>　　　　　Appellant,<br><br>v.<br><br>THE BLOOMFIELD GROUP, INC.,<br><br>　　　　　Appellee.<br>_____ | BAP Nos.　CC-14-1202-TaKuPa<br>　　　　　　CC-14-1203-TaKuPa<br>　　　　　　(related appeals)<br><br>Bk. No.　12-27849<br><br>Adv. No.　12-01420<br><br><br><br>**MEMORANDUM**[*] |

Argued and Submitted on November 20, 2014
at Los Angeles, California

Filed – December 11, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Wayne E. Johnson, Bankruptcy Judge, Presiding

Appearances:　Lenore L. Albert for appellant Catherine Olsen;
John Ott for appellee The Bloomfield Group, Inc.

Before:　TAYLOR, KURTZ and PAPPAS, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

The Bloomfield Group, Inc. ("TBG") filed a nondischargeability complaint against debtor Catherine Olsen, seeking to determine a debt nondischargeable under § 523(a)(2)(A), (a)(4), and (a)(6).[1] The debt was based on a state court judgment against the Debtor for breach of contract, conversion, and fraud. In response, the Debtor counterclaimed against TBG, alleging theories of tort and violations of federal law. The bankruptcy court granted summary judgment in favor of TBG on both the nondischargeability complaint and the counterclaims. The Debtor appeals from the bankruptcy court's judgments.

We AFFIRM.

**FACTS**

The Debtor owned and operated Animal Chat, Inc., dba Royal Hound Pet Products, a distributor of pet products. TBG is in the business of graphic design and marketing. In 2007, the Debtor hired TBG to create a website and other marketing materials for the Royal Hound business. The business relationship quickly soured, resulting in ownership disputes as to the Royal Hound website and related intellectual property issues.

In December 2008, TBG filed a complaint against the Debtor and Animal Chat in California state court for, among other things, breach of contract, conversion, fraud and deceit, and

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "CCP" references are to the California Code of Civil Procedure and all "LBR" references are to the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California.

negligent misrepresentation. Although she filed initial demurrers and, eventually, an answer to the state court complaint, the Debtor did not file any counterclaims against TBG. The Debtor was at first represented in the state court action but apparently became self-represented just before trial. She did not appear at trial.

In mid-2010, the state court entered a judgment against the Debtor and Animal Chat based on breach of contract, fraud, and conversion. As to fraud, it determined that the Debtor and Animal Chat engaged in intricate fraud and deceitful actions, intending never to pay TBG and, instead, to steal information from it. The state court awarded TBG $31,044.70 in actual damages for fraud. Finding that the conduct was egregious, it further awarded punitive damages, for a cumulative total award of $93,134.10 for fraud. The state court also awarded actual damages based on an alternative theory of conversion. The Debtor did not appeal from the judgment and it is now final.

Approximately two years later, in mid-2012, the Debtor filed a chapter 7 petition. TBG thereafter commenced an adversary proceeding against the Debtor, seeking a determination that the state court judgment was nondischargeable under § 523(a)(2), (a)(4), and (a)(6). In response, the Debtor pled six counterclaims against TBG: (1) violation of 18 U.S.C. § 1030; (2) violation of 18 U.S.C. § 2701; (3) interference with a prospective economic advantage; (4) invasion of privacy; (5) conversion and infringement; and (6) negligent misrepresentation and set-off.

TBG moved for summary judgment on both its

3

nondischargeability complaint and the Debtor's counterclaims. After a hearing, the bankruptcy court granted summary judgment in TBG's favor on both motions. It determined that the state court judgment was nondischargeable under § 523(a)(2)(A), (a)(4), and (a)(6). It further determined that the Debtor's counterclaims were barred by principles of claim preclusion or, in the alternative, that the various statutes of limitations barred the claims.

The Debtor timely appealed from the judgments.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1. Did the bankruptcy court err when it granted TBG summary judgment on its nondischargeability claims by applying issue preclusion to the state court judgment?

2. Did the bankruptcy court err when it granted TBG summary judgment on the Debtor's counterclaims?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgments. Shahrestani v. Alazzeh (In re Alazzeh), 509 B.R. 689, 692-93 (9th Cir. BAP 2014).

## DISCUSSION

Summary judgment is appropriate where the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (applicable in adversary proceedings under Fed. R. Bankr. P.

4

7056). The bankruptcy court views the evidence in the light most favorable to the non-moving party in determining whether there exists any genuine disputes of material fact and the movant is entitled to judgment as a matter of law. See Fresno Motors, LLC v. Mercedes Benz USA, LLC, --- F.3d ----, 2014 WL 5651930, at *3 (9th Cir. Nov. 5, 2014). And, it draws all justifiable inferences in favor of the non-moving party. See id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." Id.

**A. The bankruptcy court did not err in granting summary judgment to TBG on its nondischargeability complaint based on the issue preclusive effect of the state court fraud judgment.**

The issue preclusive effect of an existing state court judgment may serve as the basis for granting summary judgment. See Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 831-32 (9th Cir. BAP 2006). In determining the issue preclusive effect of a state court judgment, the bankruptcy court must apply the forum state's law of issue preclusion. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); see also 28 U.S.C. § 1738 (federal courts must give "full faith and credit" to state court judgments). As the question here involves the preclusive effect of a California state court judgment, we apply California preclusion law.

In California, application of issue preclusion requires that: (1) the issue sought to be precluded from re-litigation is

5

identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. Lucido v. Super. Ct., 51 Cal. 3d 335, 341 (1990).

Even if all five requirements are satisfied, however, California places an additional limitation on issue preclusion: courts may give preclusive effect to a judgment "only if application of preclusion furthers the public policies underlying the doctrine." In re Harmon, 250 F.3d at 1245 (citing Lucido, 51 Cal. 3d at 342); see also In re Khaligh, 338 B.R. at 824–25.

The party asserting preclusion bears the burden of establishing the threshold requirements. In re Harmon, 250 F.3d at 1245. This means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). And, ultimately, "[a]ny reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." Id.

**1.    The bankruptcy court applied issue preclusion, not claim preclusion, to the state court judgment.**

The Debtor's principal argument with respect to the summary judgment on nondischargeability – truly, her only substantive argument on that appeal – is that the bankruptcy court improperly applied claim preclusion to the state court judgment, rather than

6

issue preclusion. We disagree.

It is well established that claim preclusion does not apply in a § 523(a) nondischargeability proceeding. Brown v. Felsen, 442 U.S. 127, 138-39 & n.10 (1979) (Act case); Seven Elves, Inc. v. Eskenazi (In re Eskenazi), 6 B.R. 366, 368 (9th Cir. BAP 1980) (same under the Bankruptcy Code). But, conversely, issue preclusion is applicable in a nondischargeability context. Grogan v. Garner, 498 U.S. 279, 285 (1991).

Here, the record reflects that the bankruptcy court correctly applied issue preclusion, rather than claim preclusion, to the state court judgment. In its memorandum decision, the bankruptcy court correctly identified the elements of each § 523(a) claim and the elements for issue preclusion under California law. It then applied issue preclusion, element by element, to the state court judgment.

The Debtor contends erroneously that the bankruptcy court's memorandum decision evidences its application of claim preclusion. She bases this assertion on the following statements: "federal courts must give a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered" and "the issue of fraud sought to be precluded from relitigation in this action is identical to that decided in the State Court Action." 14-1202 Aplt's Op. Br. at 3, 4 (emphasis in original). Neither statement is problematic.

Federal courts routinely employ the first statement with respect to the requirement that, in accordance with 28 U.S.C. § 1738, they give "full faith and credit" to the judgments of

7

state courts. Most cases involving issue preclusion of a state court judgment include a reference to this exact statement of law. See, e.g., Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995). It is not per se indicative of claim preclusion application.

The second statement accurately reflects that the elements of fraud under § 523(a)(2)(A) "mirror the elements of common law fraud and match those for actual fraud under California law . . . ." Tobin v. Sans Souci Ltd. P'ship (In re Tobin), 258 B.R. 199, 203 (9th Cir. BAP 2001) (citation and internal quotation marks omitted). The fact that the elements of both claims correspond, however, does not make claim preclusion the exclusive doctrine available with respect to preclusion analysis in a nondischargeability proceeding. Instead, the second statement merely reflects the bankruptcy court's appropriate identification of the state court fraud judgment as the relevant basis for issue preclusion.[2]

We also reject the Debtor's argument that this Panel must follow Brown rather than Grogan and, thus, reverse. We – along

---

[2] Issue preclusion and claim preclusion also are not mutually exclusive doctrines. "Issue preclusion overlaps claim preclusion in the sense that actual litigation of an issue ordinarily qualifies for application of both claim and issue preclusion." Christopher Klein et al., Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 Am. Bankr. L.J. 839, 852 (2005). Thus, to the extent that an issue is "part of the original claim, then claim preclusion is also available. If the actually litigated issue falls outside the limits of the transaction that determines the dimensions of the claim and, hence, applies to a different claim, then issue preclusion assumes greater importance." Id.

8

with every federal court – are bound by these Supreme Court decisions. Contrary to the Debtor's suggestion, however, these case holdings are not mutually exclusive and our conclusion here is consistent with both.

**2. Section 523(a)(2)(A) exception to discharge.**

Given the Debtor's misguided focus on claim preclusion, she fails to adequately challenge the bankruptcy court's application of issue preclusion to the state court judgment. At best, with respect to § 523(a)(2)(A), the Debtor challenges the bankruptcy court's application of the first and last elements of issue preclusion when she notes that intent is not the same under the Bankruptcy Code and California law and that the state court judgment did not separate her liability from that of Animal Chat. Neither argument is persuasive.

A debtor is not discharged in bankruptcy from any debt obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The creditor bears the burden of demonstrating, by a preponderance of the evidence, each of the following five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the representation or omission; (3) an intent to deceive; (4) the creditor's justifiable reliance on the representation or conduct; and (5) damage to the creditor proximately caused by reliance on the debtor's representations or conduct. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010).

As stated, the elements of fraud under § 523(a)(2)(A) are equivalent to the elements of actual fraud under California law.

9

See In re Tobin, 258 B.R. at 203. To establish actual fraud in California, "the plaintiff [must] show: (1) misrepresentation; (2) knowledge of the falsity of the representation; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages." Id. (emphasis added) (citation omitted). Contrary to the Debtor's argument, a negligent misrepresentation is not sufficient to establish actual fraud under California law. We, thus, reject the notion that § 523(a)(2)(A)'s requirement of intent to deceive does not correlate to California's requirement of intent to induce reliance.

The Debtor's argument regarding liability and apportionment of the state court judgment is similarly unavailing. There is no dispute that the state court entered its fraud judgment against the Debtor in her personal capacity. That the state court judgment did not provide for joint and several liability is irrelevant under these circumstances.

Having determined that the bankruptcy court identified the correct legal standard for applying issue preclusion and having found nothing in the record suggesting misapplication of that legal standard, we conclude that the bankruptcy court did not commit reversible error in granting summary judgment based on the issue preclusive effect of the state court's fraud judgment.

At oral argument, the parties confirmed that the state court awarded actual damages in the amount of $31,044.70 for fraud and, in the alternative, for conversion. Thus, there is no dispute that the judgment amount subject to nondischargeability is limited to $93,134.10 ($31,044.70 in actual damages under either theory and $62,089.40 in punitive damages in connection with the

10

fraud determination). Because we affirm the bankruptcy court's determination that the state court fraud judgment for $93,134.10 was excepted from discharge under § 523(a)(2)(A), we need not – and do not – review the bankruptcy court's grant of summary judgment on the § 523(a)(4) or (a)(6) claims.

**B.    The bankruptcy court did not err in granting summary judgment in favor of TBG on the Debtor's counterclaims.**

In her second related appeal, the Debtor argues that the bankruptcy court committed reversible error in granting summary judgment to TBG on her counterclaims. She primarily asserts error in three of the bankruptcy court's determinations: (1) that the statutes of limitations ran on her counterclaims; (2) that her counterclaims were compulsory and, therefore, waived when she failed to raise them in the state court action; and (3) that her violation of the local bankruptcy rules supported summary judgment in TBG's favor. It appears that the Debtor muddles and improperly conflates, the first two arguments. She also fails to specifically and distinctly address a number of determinations made by the bankruptcy court and, consequently, waives those issues. See Padgett v. Wright, 587 F.3d 983, 986 n.2 (9th Cir. 2009) (per curiam) (appellate court "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief."). In any event, we reject her arguments.

**1.    Statute of limitations.**

As a preliminary matter, we note that the Debtor fails to specifically or appropriately address the bankruptcy court's federal law based statutes of limitations determinations as to

11

the first, second, and half of the fifth (infringement) counterclaims. Her general reliance on CCP § 426.30 and California case law on statute of limitations is inapposite. As a result, these issues on appeal are deemed waived. See Padgett, 587 F.3d at 985 n.2.

Similarly, the Debtor fails to specifically and distinctly address the statute of limitations determinations relating to interference with a prospective economic advantage or invasion of privacy. As a result, those issues also are deemed waived. See id.

### a. Conversion.

The bankruptcy court determined that the Debtor's conversion counterclaim – based on TBG's alleged conversion of trademarks, copyrighted text, and logos – was barred by the three-year statute of limitations under CCP § 338(c). Based on the evidence before it, the bankruptcy court noted that the events supporting the Debtor's allegations of conversion occurred no later than September 2008. Given the applicable three-year statute of limitations period, it concluded that the statute of limitations ran in 2011 and that the statute of limitations barred the Debtor from bringing the conversion counterclaim in 2013.

The counterclaim pleading itself expressly provides that the alleged conversion took place prior to October 23, 2008. The evidence before the bankruptcy court, including exhibits attached to the Debtor's supplemental declaration, do not allege conversion occurring after October 2008. That the Debtor provided in declaratory evidence that "[t]he things I have complained of in my counter-claims continued beyond 2008" is not

12

sufficient to create a genuine dispute as to whether new acts of conversion occurred after October 2008.

### b. Negligent misrepresentation.

The bankruptcy court similarly determined that the Debtor was aware of TBG's alleged misrepresentation regarding the website in December 2008. It also determined that the two-year statute of limitations for negligent misrepresentation ran in December 2010 and barred the Debtor's claim for negligent misrepresentation in 2013.

In her 2008 state court declaration, the Debtor attested that she became aware in mid-September 2008 that the website was "completely inaccurate," contained incorrect content, and was "full of typos and errors." She also attested that she hired a new company to build and host the website. Again, the evidence before the bankruptcy court does not reflect that TBG made or had the opportunity to make additional representations regarding the website after December 2008. Again, the Debtor's general allegation that the events supporting the counterclaims continued beyond 2008 does not save this counterclaim.

To the extent the Debtor contends that each new breach restarts the clock on the statute of limitations, we reject her argument under these facts. California recognizes continuing-wrong accrual principles, which act as an exception to the limitations period. See Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1197 (2013) (discussing the continuing violation doctrine and the theory of continuous accrual). Neither principle, however, applies to these circumstances.

The continuing violation doctrine "applies where there is no

13

single incident that can fairly or realistically be identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002) (citation and internal quotation marks omitted); Aryeh, 55 Cal. 4th at 1197 ("Some injuries are the product of a series of small harms, any one of which may not be actionable on its own."). That is not the case here; the Debtor's alleged harm was complete and actionable in 2008.

Conversely, the theory of continuous accrual "applies whenever there is a continuing or recurring obligation: [w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." Aryeh, 55 Cal. 4th at 1199 (citation and internal quotation marks omitted). Here, pursuant to the Debtor's 2008 state court declaration, she terminated TBG's services on October 10, 2008. As a result, no continuing or recurring obligation existed between the parties after that date.

The Debtor never provided any evidence to the bankruptcy court showing the existence or even the possibility of a new breach or violation after 2008. Once again, stating vaguely that violative events continued to occur after 2008 is insufficient to create a genuine factual dispute for trial. And, insofar as she contends that TBG breached an oral agreement by filing an action against her, in addition to the fact that she raises this argument for the first time on appeal, the Debtor fails to explain how or why that tolled the time to bring her counterclaims based on tort theories.

### c.   Equitable tolling.

The Debtor also continues to argue that the doctrine of

14

equitable tolling applies to her counterclaims based on her attempt to seek relief from GoDaddy, the continuing nature of the torts, and her bankruptcy case. As recognized by the bankruptcy court, equitable tolling enables the bankruptcy court to "toll a period if it concludes that equitable considerations excuse a plaintiff's failure to take the required action within the time period." DeNoce v. Neff (In re Neff), 505 B.R. 255, 263-64 (9th Cir. BAP 2014). We, once again, are unpersuaded by the Debtor's argument.

The Debtor raises her argument as to GoDaddy, at least in connection with equitable tolling, for the first time on appeal. As a result, she waives that aspect of her argument. See Padgett, 587 F.3d at 986 n.2. Even if we considered it, however, the Debtor fails to explain how seeking relief from the GoDaddy company – admittedly, a nonjudicial process – supports her position.

The Debtor also fails to explain or support the "continuing nature of the torts." In her opposition to the summary judgment motion on TBG's adversary complaint, she repeatedly refers to the continuing nature of the torts, but never explains what this means. Once again, simply stating that torts continued to happen after 2008 is not enough to create a genuine factual dispute for trial.

Finally, the Debtor's bankruptcy case did not toll the time for the counterclaims. As noted by the bankruptcy court, the Bankruptcy Code provides a statutory provision that extends the time to file claims, but that statutory extension does not constitute equitable tolling. See 11 U.S.C. § 108. Section 108

15

only provides for potential claims where the appropriate statute of limitations did not expire prior to the date of petition. As previously stated, the relevant statutes of limitations on all of the Debtor's counterclaims ran well prior to the petition date. The Debtor provides no other authority to support her position that the claims were tolled when she filed bankruptcy.

### d.　"Offset."

The Debtor also contends that the statute of limitations was not tolled because a claim for offset existed and that she, thus, possessed an affirmative defense. Once again, her argument fails.

As the bankruptcy court noted in its memorandum decision, the Debtor failed to properly allege an offset claim in her counterclaims. The counterclaims twice refer to the term "set-off": in the title of the sixth claim for relief for negligent misrepresentation and in the prayer for relief. Other than those summary references, however, the Debtor did not provide any statutory or case law authority for offset or otherwise discuss offset in the counterclaim pleading. And, in opposing TBG's motions for summary judgment, there is no reference to, let alone discussion of, offset.

Instead, it appears that the Debtor first raised offset as a stand-alone counterclaim at the hearing before the bankruptcy court; a transcript of that hearing, however, was not included on the record on appeal and we have no way of knowing what was said or exchanged. But, given that there is no basis for the Debtor's alleged offset claim, there is no factual dispute suggesting

16

reversal.[3]

In sum, the Debtor has not shown that the bankruptcy court committed reversible error in determining that her counterclaims were barred by statutes of limitations.

**2.    The adversary counterclaims were barred by the Debtor's failure to raise them in the state court action.**

The Debtor next argues that the bankruptcy court erred in determining that the counterclaims were barred in the adversary proceeding. In particular, she argues that, under California law, claim preclusion does not serve as a bar to a subsequent action where litigation was terminated by demurrer or a statute of limitations determination. Here, the state court judgment followed a trial on the merits, so this point is inapt.

The bankruptcy court further determined that the counterclaims were compulsory pursuant to CCP § 426.30 and that the Debtor should have raised them in the state court action. As she failed to do so, the Debtor waived the ability to raise the counterclaims in the adversary proceeding.

The Debtor contends, however, that CCP § 426.30 contains limitations and cites <u>Russo v. Scrambler Motorcycles</u>, 56 Cal.

---

[3] The Debtor also summarily refers to the sale of real property located in Big Bear, California. It appears that this aspect of her argument relates to now-final orders entered by the bankruptcy court granting stay relief as to the property, denying the Debtor's reconsideration motion thereto, and denying her emergency motion to stay execution of a sheriff's sale. To the extent we are correct in our assumption, those issues are not properly before us on appeal and we do not consider them.

17

App. 3d 112 (1976)[4] in support of her position. Contrary to the Debtor's belief, the limitations to CCP § 426.30 do not aid her. In pertinent part, CCP § 426.30(b) provides for exceptions to the waiver of a related cause of action not properly raised. The exception applies if the state court lacks personal jurisdiction over a person or if the party who failed to plead the compulsory cause of action also failed to file an answer. Neither instance applies to this case as there is no dispute that the state court had personal jurisdiction over the Debtor during the state court action or that she filed an answer in that case.

The Debtor also cites with enthusiastic approval <u>Keidatz v. Albany</u>, 39 Cal. 2d 826 (1952), for the proposition that "if new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint." The <u>Keidatz</u> decision, however, is distinguishable.

In <u>Keidatz</u>, the plaintiffs' first action was for rescission of contract; a demurrer to the complaint was sustained with leave to amend, but when the plaintiffs failed to amend, a judgment was entered for the defendant for costs. 39 Cal. 2d at 827. The plaintiffs then commenced a second action based on fraud in the inducement. <u>Id.</u> at 827-28. On appeal, the California Supreme Court determined that additional facts not plead in the initial

---

[4] The Debtor improperly cut and pasted a "headnote" from the decision in <u>Russo v. Scrambler Motorcycles</u> into her opening brief. She provides no analysis as to why or how this decision supports her position.

18

defective complaint meant that the judgment in the first action was not a bar to the second action. Id. at 828-29. Here, however, there is no allegation that the Debtor filed a defective cause of action in the state court action; the record is clear that she never filed any counterclaim in the state court action.

The only counterclaim that the Debtor specifically addresses on appeal is conversion; she argues that her conversion counterclaim was not compulsory. The conversion counterclaim related to TBG's alleged theft of the Royal Hound domain name and its alleged conversion of the Debtor's trademarks, copyrights, and logos. The Debtor, however, asserted the facts supporting TBG's alleged conversion in the state court action. In her 2008 state court declaration, the Debtor attested that she owned the Royal Hound domain name, as well as related pending patents and trademarks, and that she hired a third party to design business logos, business cards, banners, letterhead, and envelopes. It is clear that the alleged conversion claim arose from the same transactions or occurrences as TBG's claims against the Debtor in the state court action.

The Debtor has not shown that the bankruptcy court committed reversible error in determining that her counterclaims were barred in the adversary proceeding.

**3. Failure to comply with the local rules.**

And, finally, the Debtor argues prejudicial, reversible error when, based on her failure to file a separate statement under the local rules, the bankruptcy court deemed all facts admitted. She erroneously asserts that TBG also failed to file a separate statement. The record evidences that TBG filed the

19

required separate statement.

In closing, the bankruptcy court noted that the Debtor failed to controvert any of the facts and evidence offered by TBG under LBR 7056-1(c)(2)(B). Thus, pursuant to LBR 7056-1(f),[5] the bankruptcy court was entitled to "assume[] that the material facts asserted by TBG [were] admitted to exist without controversy." We see no error in the bankruptcy court's reliance on the local bankruptcy rules. Any prejudice to the Debtor was the result of her own inaction.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court.

---

[5] LBR 7056-1(f) provides that, in determining a motion for summary judgment, the bankruptcy "court may assume that the material facts as claimed and adequately supported by the movant are admitted to exist without controversy, except to the extent that such facts are: (1) included in the 'statement of genuine issues,' and (2) adequately controverted by declaration or other evidence filed in opposition to the motion."